ECKLES v. NOWLIN et al.

(Court of Civil Appeals of Texas. Dallas. June 28, 1913.)

1. LANDLORD AND TENANT (§ 29*)—PURPOSE OF LEASE—ILLEGALITY—ENFORCEMENT.

A lease of premises to be occupied as a bawdyhouse by the lessee, executed by the lessor who had knowledge of the lessee's purpose, and who acquiesced in the use of the premises and collected the rent, is illegal, and neither party may demand relief therefrom or thereunder, within the rule that, where two persons participate in an unlawful transaction and are in pari delicto, neither a court of law nor equity will aid either, notwithstanding Pen. Code 1911, arts. 496, 500, 501, defining a bawdyhouse and punishing the keeper and owner thereof, unless the owner proceeds to prevent the keeping by giving information to the prosecuting attorney.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 85; Dec. Dig. § 29.*]

2. LANDLORD AND TENANT (§ 134*)—USE OF PREMISES—ILLEGAL LEASE—INJUNCTION.

The granting of an injunction under Pen. Code 1911, art. 503, authorizing the enjoining at the suit of any citizen of the keeping of any disorderly house, at the suit of an owner executing a lease of premises with knowledge of the lessee's purpose to use the same as a bawdyhouse, is in effect the granting of relief to

the owner from his illegal contract, and equity cannot issue the injunction.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 482–485; Dec. Dig. § 134.*]

3. NUISANCE (§ 77*) — DISORDERLY HOUSE — INJUNCTION—REMEDY.

Pen. Code 1911, art. 503, providing that actual or contemplated use of any premises for a disorderly house shall be enjoined at the suit of the state or any citizen, contemplates the issuance of an injunction only in independent suits primarily to abate the unlawful thing, and not as an ancillary proceeding to gain possession in suits of trespass to try title.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 189, 190; Dec. Dig. § 77.*]

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by W. H. Eckles against Fay Nowlin and another. From a judgment denying relief, plaintiff appeals. Affirmed.

Walker & Williamson, of Dallas, for appellant. Nelms & Puckitt, of Dallas, for appellees.

RASBURY, J. Appellant, under the statutory remedy of trespass to try title, filed this suit to recover title and possession to lot No. 8 in block D of Cedar Grove addition to Dallas, Tex. The petition also charged that appellees were conducting both a bawdy and disorderly house as well as committing individual acts of prostitution upon the said premises in violation of the penal laws of this state, and prayed for the issuance of a writ of injunction against appellees enjoining them from using the premises for the purposes charged pending determination of this suit. Appellees admitted, in effect, the allegations of appellant's petition, urging as well that appellant built for and leased to them the building upon said premises to be used by them as charged by appellant, and had, in person, received the rentals due upon said premises derived from such traffic, which was not denied by appellant. The injunction was refused. Hence this appeal.

[1] The facts found by the court below are that shortly before May 15, 1912, while appellant was constructing the house occupied by appellees upon the described premises, he leased same to appellees to be occupied by them as a house of prostitution; it being so understood by all concerned. On said May 15, 1912, appellees entered into possession of the premises, using same since said time for the purposes of prostitution, with the full knowledge and acquiescence of appellant, who has during said tenancy collected the rent in person. Counsel on neither side have availed themselves of the right they have to brief the case, nor for that matter have they cited authorities, and hence we are without assistance in that respect. The trial court, however, in effect, held that the lease under which he found appellees were occupying the premises was illegal, and,

having been entered into voluntarily by both parties with full knowledge of its illegality, neither could demand relief therefrom or thereunder. We think the court's holding correct. While the court's findings of fact fail to show the term of the lease, it does appear that appellees at the time of the application for the injunction were in fact occupying the premises under lease from appellant. This suggests incidentally that the suit in trespass itself is perhaps founded upon the theory that it can be maintained on the ground that the premises were leased for unlawful purposes, and hence held under a void lease, which would be insufficient to sustain the right of occupancy by appellees. However that may be, it is also true that, notwithstanding the nullity of the lease under which appellees held the premises, "courts, as the best means of discouraging such acts, have generally adopted the rule that the parties shall not receive affirmative aid to extricate themselves from difficulties in which, by their unlawful conduct, they have involved themselves, but shall be left as they are found. This principle does not recognize in either party the better right under the void undertaking, but treats a plaintiff who thus shows himself to be equally guilty with his adversary as not deserving the relief sought from the court." Olcott v. I. & G. N. Ry. Co., 28 S. W. 728. "Where two persons guilty of participation in an unlawful transaction are in pari delicto, as in this case, neither a court of law nor a court of equity will aid either to recover or reinvest himself with any title or interest which he, in consideration of such unlawful contract, has vested in the other, but will leave them in the same condition as to vested interests as they by their own acts have placed themselves." Beer v. Landman, 88 Tex. 450, 31 S. W. 805. The reason for the rule lies of course in the fact that courts are for the enforcement of lawful contracts and not for the purpose of relieving one from the burdens of a joint voluntary illegal undertaking any more than they will enforce for the other party such illegal contracts.

Nor do we think, as contended by counsel for appellant on argument, that because our penal law adjudges as unlawful the acts undertaken by appellant and appellees under the lease in question, and provides for their punishment in that respect in any sense affects the application of the rule just stated to the parties in the instant case. Article 496, Rev. Penal Stat., defines bawdy and disorderly houses, and it may be conceded for the purpose of this opinion that the place conducted by appellees comes within such definition. Article 500 fixes the punishment for maintaining such places. Article 501 declares that the owner of such premises "having information that the premises are being kept, used or occupied" for such purposes

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes·

shall be equally guilty and subject to the same punishment provided for against the person actually conducting same, "unless he shall immediately proceed to prevent the keeping, using or occupying of such house, etc., by giving such information to the county or district attorney." Under the foregoing provisions, it is clear that appellant, or the owner of the premises, can avoid any criminal punishment by furnishing to the county or district attorney the information relating to the use to which the premises are being put, since by the express terms of the article his liability for punishment ends upon the giving of such information, and as a consequence affords no reason for a departure from the well-settled rules in such cases.

[2] But it is also contended that article 503 authorizes the issuance of injunction as sought in this case. That article provides that "the habitual, actual, threatened or contemplated use of any premises, * * * for the purpose of keeping, * * * of a bawdy or disorderly house, shall be enjoined at the suit of either the state or any citizen thereof." The point is that appellant, being a citizen of the state, may enjoin the keeping of the unlawful house without reference to any other issue in the case. There are three insuperable objections to the contention. To authorize the issuance of an injunction under said article in a suit to recover the premises held by appellees under a voluntary illegal lease with appellant would be but a round-about method of relieving appellant from his illegal contract by courts which consistently refuse to interfere on behalf of either party thereto. Again, to authorize the issuance of an injunction would present the anomaly of permitting appellant to relieve himself by injunction of his own illegal acts, and that too by equitable process. [3] Finally, said article in our opinion contemplates the issuance of the injunction only in independent suits brought primarily for the purpose of abating the unlawful thing, and not as an ancillary proceeding to gain possession of premises in suits of trespass to try title.

The judgment is affirmed.